1

2

3

4

5

6

7

The Honorable Ronald B. Leighton

8

UNITED STATES DISTRICT COURT

9

WESTERN DISTRICT OF WASHINGTON

10

AT TACOMA

11    THE VANCOUVER CLINIC, INC.,                )
                                                 )    Case No. 3:12-cv-05016-RBL
12              Plaintiff,                        )
                                                 )    ORDER GRANTING UNITED STATES'
13         v.                                    )    MOTION FOR SUMMARY JUDGMENT
                                                 )    AND DENYING PLAINTIFF'S MOTION
14    UNITED STATES OF AMERICA,                   )    FOR SUMMARY JUDGMENT
                                                 )
15              Defendant.                        )
                                                 )
16    _____)

17         This matter is before the Court on the parties' cross-motions for summary judgment under Fed. R.

18    Civ. P. 56. For the reasons below,  the Clinic's Motion is **DENIED,** and the United States' Motion is

19    **GRANTED**.

20                                          **BACKGROUND**

21         The material facts in this case are virtually undisputed. The Vancouver Clinic, Inc. (the "Clinic"

22    or "Plaintiff") is a professional service corporation, incorporated under the laws of the State of

23    Washington, that provides medical treatment in a variety of specialties at locations in southwest

24    Washington. During 2007, 2008, and 2009 (the "Tax Periods"), the Clinic entered into agreements, each

25    entitled an "Associate Physician Loan Agreement," with newly hired physicians (the "Agreement").

26

27

28

During the Tax Periods, the terms of each Agreement were substantially similar, with the exceptions being the identities of the respective physicians, and the amounts advanced by the Clinic to the respective physicians.

The purpose of each of the Agreements is to facilitate the Clinic's physician recruitment and retention. To accomplish this goal, the Agreement requires the newly-hired physician to work for the Clinic for a period of five years, in exchange for two advances of funds to the physician during the physician's first and second years of employment. During the years in question, each advance ranged from $12,000 to $35,000, depending on the physician's specialty and the difficulty of recruiting that physician. The Agreement provides that the physicians would only have to repay the advances if they broke their contractual promise to remain employed by the Clinic for five years. Under the terms of the Agreement, the advances accrue interest at the prime rate over the five year term of the Agreement. However, physicians are not required to pay interest over the term of the Agreement, and, as long as they continue working at the Clinic, are not required to repay anything at all.

During the course of recruitment, Plaintiff presented each physician with a copy of the Agreement. Plaintiff did not negotiate the terms of the Agreement with new physicians; instead, the Agreement was presented during the course of recruitment alongside the physician's other employment paperwork. The Clinic did not conduct a financial background investigation or credit check to evaluate the creditworthiness of physicians before advancing funds under the Agreement. Physicians were free to accept or reject the Agreement and some did reject the Agreement. At the time the Clinic entered into the Agreements with the physicians, the Clinic intended to retain the physicians as employees for at least five years. Similarly, when they signed the Agreement, the physicians intended to work at the Clinic for at least five years.

During 2007, the Clinic advanced the aggregate sum of $663,500 to 44 physicians. During 2008, the Clinic advanced the aggregate sum of $482,000 to 35 physicians.  During 2009, the Clinic advanced the aggregate sum of $441,674 to 34 physicians. The Clinic anticipates that by the end of 2013, it will

Lindsay L. Clayton, 202.307.2956
Quinn P. Harrington, 202.514.6507
U.S. Department of Justice, Tax Division
P.O. Box 683,Washington, D.C. 20044-0683

1  have forgiven 74% of the funds advanced in 2007, 83% of the funds advanced in 2008, and 97% of the

2  funds advanced in 2009. When the Clinic made advances under the Agreement, it did not withhold

3  income or payroll tax, or report the payments on a Form W-2 (Wage and Tax Statement). Rather, the

4  Clinic's practice was to report income to the physician on a Form 1099 (Miscellaneous Income) at the

5  time of "forgiveness" under the Agreement.

6  　　　　On or about January 10, 2011, the United States, through the Internal Revenue Service, assessed

7  against the Clinic withholding and FICA taxes (Form 941 taxes), together with interest, in the total

8  amount of $626,745. On or about January 25, 2011, the Clinic paid the withholding and FICA tax

9  assessments (Form 941 taxes) together with the interest attributable thereto, for each of the Tax Periods,

10  in the total amount of $626,745. On or about June 15, 2011, Plaintiff filed with the Internal Revenue

11  Service claims for refund of the tax paid by it, in the amount of $593,398. On November 16, 2011, the

12  United States, through the Director of the Ogden, Utah, Service Center of the Internal Revenue Service,

13  mailed to Plaintiff Notices of Disallowance of each of its Claims for Refund of tax for each of the Tax

14  Periods. This lawsuit followed.

15  　　　　　　　　　　　　　　　　　　**DISCUSSION**

16  　　　　If an advance from employer to employee is compensation for services, then the employer must

17  withhold the appropriate employment and income taxes and report the payments to the employee on a

18  Form W-2. 26 U.S.C. §§ 61(a)(1) (including in gross income all "compensation for services"); 3401

19  (defining "wages" as "all remuneration for services performed by an employee for his employer"); 3402

20  (requiring employers to deduct and withhold prescribed amounts from wages); 3101 (imposing

21  employment tax on employees' wages); 3111 (imposing employment tax on employer's payment of

22  wages); *see also Mayo Foundation for Medical Education and Research v. United States*, 131 S. Ct. 704,

23  709 (2011) (summarizing employment tax structure). If, on the other hand, the advance is a loan, then

24  there is no withholding, and the payments are not reported as income to the employee.

25  　　　　The law has developed one principle for determining whether a transaction is a loan for tax

26

27  　　　　　　　　　　　　　　　　　　　　　　　Lindsay L. Clayton, 202.307.2956
　　　　　　　　　　　　　　　　　　　　　　　　　　　Quinn P. Harrington, 202.514.6507

28  Order　　　　　　　　　　　　　　　　　　　　　　U.S. Department of Justice, Tax Division
Case No. 3:12-cv-05016-RBL　　　　　　　3　　　　　　　P.O. Box 683,Washington, D.C. 20044-0683

purposes. For a transaction to constitute a bona fide loan, there must be an unconditional promise to repay at the time the funds are advanced.. *Saunders v. Comm'r*, 720 F.2d 871, 873-874 (5th Cir. 1983) (finding the presence of an "exceedingly generous forgiveness" provision to be evidence that a transaction was not a loan); *Beaver v. Comm'r*, 55 T.C. 85, 91 (1971); *Winter v. Comm'r*, 100 T.C.M. (CCH) 604 (2010); *Nix v. Comm'r*, 44 T.C.M. (CCH) 105 (1982). That dictates the second question: whether the parties actually intend for the advance to be repaid at the time that it is made. A transaction is not a loan if the parties do not intend repayment at the time it is entered into. *Beaver,* 55 T.C. at 91; *Nix*; *see also Welch v. Comm'r*, 204 F.3d 1228 (9th Cir. 2000), *aff'g* 75 T.C.M. (CCH) 2065 (1998); *Chism's Estate v. Comm'r,* 322 F.2d 956, 960-961 (9th Cir. 1963); *Clark v. Comm'r*, 266 F.2d 698, 710-711 (9th Cir. 1959).

Determining the intent of the parties is a factual question that requires examining the facts and circumstances surrounding the exchange. *E.g.*, *Haber v. Comm'r*, 52 T.C. 255, 266 (1969). The judicial ascertainment of subjective intent requires the Court to look beyond the parties' testimony and examine all of the facts and circumstances surrounding the arrangement between the parties. *E.g., Fisher v. Comm'r*, 54 T.C. 905, 910 (1970); *American Properties v. Comm'r*, 28 T.C. 1100 (1957), *aff'd* 262 F.2d 150 (9th Cir. 1958). Courts consider "a number of other factors as relevant in assessing whether a transaction is a true loan." *Welch*, 204 F.3d at 1230. This list of factors considered is "non-exclusive" and "no single factor is dispositive"; rather, the list forms "a general basis upon which courts may analyze a transaction." *Id.*; *see also Goldstein v. Comm'r*, 40 T.C.M. (CCH) 752 (1980).

In this case, the performance between the parties and the Agreement on its terms strongly suggest that the parties did not actually intend repayment. The physicians expected to fulfill their promise to work at the Clinic for five years, and, as a result, the advances would be forgiven. The name the parties gave the Agreement is not persuasive, nor is it dispositive. The Agreement provided physicians with up-front advances as an inducement to get the physicians to remain working for five years. The Agreement penalized physicians who departed early by making them repay under a provision that functioned like a

Lindsay L. Clayton, 202.307.2956
Quinn P. Harrington, 202.514.6507
U.S. Department of Justice, Tax Division
P.O. Box 683,Washington, D.C. 20044-0683

liquidated damages clause for the physician's breach of his or her promise to remain employed. Employee retention was what the Clinic wanted to achieve through the Agreement: the Clinic wanted to reap the benefits of the productive years of the physician's tenure in years three, four, and five, while at the same time giving the physicians much-needed funds in the early years of employment when they were not as valuable to the Clinic. If the physicians did not stay, then the Clinic wanted to get that money back.

The expectation of the parties at the time they entered into the Agreement was that the physicians would serve their time for five years at a minimum. They would not repay any loan because they would fulfill their obligation for five years. And it is only in the exceptional case that anyone would repay the advances. That has to be the controlling expectation or the Agreement would look totally different than the deal consummated by the parties. The parties' expectation, their intent, was that the loan would be forgiven, and there was no fixed schedule for repayment at the time that the agreement was signed. Moreover, the "borrower" did not have a reasonable prospect of repaying in the vast majority of those circumstances.

The cases cited above compel just one conclusion: advances under the Agreement were compensation for services. The primary purpose of the Agreement was to offer an incentive for physicians to remain with the Clinic for five years. The Clinic adopted a commonsense solution to a common problem. Examined under a microscope, it both appears and is a part of the Clinic's compensation package. The advances were wages for services, required to be recognized as compensation. As a result, the Clinic was required to withhold the appropriate employment and income taxes from the advances and report the advances to the physicians on a Form W-2 in the tax period in which the payments were made.

Lindsay L. Clayton, 202.307.2956
Quinn P. Harrington, 202.514.6507
U.S. Department of Justice, Tax Division
P.O. Box 683,Washington, D.C. 20044-0683

1    Accordingly, the United States' Motion for Summary Judgment is **GRANTED** and Plaintiff's claims

2    are **DISMISSED WITH PREJUDICE**.

3

4    The Clerk shall promptly enter judgment in accordance with this order.

5

6    **IT IS SO ORDERED**.

7

8    Dated this 9th day of April, 2013

9

10

11

12    Ronald B. Leighton
       United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    Order
       Case No. 3:12-cv-05016-RBL                    6

Lindsay L. Clayton, 202.307.2956
Quinn P. Harrington, 202.514.6507
U.S. Department of Justice, Tax Division
P.O. Box 683,Washington, D.C. 20044-0683